UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

GABRIEL MEZA DOMEGS,

        Petitioner,

v.

UNKNOWN PARTY #1, et al.,

        Respondents.
_____/

Case No. 1:26-cv-2042

HON. ROBERT J. JONKER

## **OPINION**

Petitioner, a United States Immigration and Customs Enforcement (ICE) detainee initiated this action when he was detained at the North Lake Processing Center located in Baldwin, Lake County, Michigan, by filing a *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241.[1]  (Pet., ECF No. 1).  For the following reasons, the Court will deny Petitioner's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241.

## **BACKGROUND**

Petitioner is a native and citizen of Cuba. (Pet., ECF No. 1, PageID.6; Stoops Decl. ¶ 4, ECF No. 5-1, PageID.33–34.) On October 8, 2008, the Department of Homeland Security (DHS) charged Petitioner with removability pursuant to §§ 212(a)(2)(A)(i)(I) and 212(a)(7)(A)(i)(I) of the Immigration and Nationality Act (INA) because Petitioner is an immigrant "who is not in possession of a valid unexpired [immigration or travel document]," and "any alien convicted of,

---

[1] At the time Petitioner filed his § 2241 petition, he was detained at the North Lake Processing Center located in Baldwin, Lake County, Michigan. (*See* Pet., ECF No. 1, PageID.1, 9.) After initiating this action, Petitioner was transferred to the ERO El Paso Camp East Montana, located in El Paso, El Paso County, Texas. *See* https://locator.ice.gov/odls/#/search (enter "A-Number" XXXXX7030; enter "County of Birth," Cuba, select "Search by A-Number") (last accessed July 28, 2026.)

or who admits to having committed, or who admits committing acts which constitute the essential elements of a crime involving moral turpitude. . . ." (*Id*. ¶ 5, PageID.33–34.) On November 19, 2008, an immigration court "ordered [Petitioner] removed from the United States to Cuba." (*Id*., ¶ 14, PageID.35.)

On December 30, 2025, ICE arrested Petitioner at the Ingham County Parole Office in Lansing, Michigan. (Stoops Decl. ¶ 32, ECF No. 5-1, PageID.36.) On December 31, 2025, ICE "served [Petitioner] with a notification of third country removal to Mexico." (*Id*. ¶ 34, PageID.36). In March 2026, DHS attempted to remove Petitioner to Mexico. (*Id.*). But he "refused to exit his pod for out-processing." (*Id.* at PageID.37). So DHS could not effectuate his removal and returned him to North Lake Processing Center in April 2026. (*Id.*). On July 3, 2026, ICE served Petitioner with a second third country removal notice to Mexico. (*Id*. ¶ 42, PageID.37.)

ICE is planning to attempt to remove Petitioner to Mexico during the week of July 20, 2026. (*Id*. ¶ 44, PageID.37). As of the date of this Opinion, ICE's online detainee locator database still says that Petitioner is in ICE custody in El Paso, Texas. *See Online Detainee Locator System*, ICE, https://locator.ice.gov/odls/#/search (enter "074147030" for "A-number" and "Cuba" for "Country of Birth"). Respondents state that Petitioner "does not need travel documents to be removed to Mexico, and [ICE] is not aware of any barriers to [Petitioner's] removal." (*Id.*)

In Petitioner's § 2241 petition, Petitioner challenges the lawfulness of his current detention and asks the Court to, *inter alia*, accept jurisdiction over this action and issue a writ of habeas corpus pursuant to 28 U.S.C. § 2241 ordering Respondents to immediately release Petitioner from detention. (Pet., ECF No. 1, PageID.7.) In an order entered on July 14, 2026, the Court directed Respondents to show cause, within three business days, why the writ of habeas corpus and other

relief requested by Petitioner should not be granted. (Order, ECF No. 4.) Respondents filed their response on July 17, 2026, (ECF No. 5).

### HABEAS CORPUS LEGAL STANDARD

The Constitution guarantees that the writ of habeas corpus is "available to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art I, § 9, cl. 2). Section 2241 of Title 28 confers the federal courts with the power to issue writs of habeas corpus to persons "in custody in violation of the Constitution or laws or treaties of the United States." This includes challenges by non-citizens in immigration-related matters. *See Zadvydas v. Davis*, 533 U.S. 678, 687 (2001); *see also A. A. R. P. v. Trump*, 605 U.S. 91, 94 (2025).

### DISCUSSION

The parties agree that Petitioner is subject to a final order of removal. As a result, Petitioner's present detention is governed by 8 U.S.C. § 1231. However, Petitioner contends that his detention is unlawful and violates the Due Process Clause of the Fifth Amendment. In response, Respondents argue that Petitioner's continued detention for purposes of removal is authorized by *Zadvydas v. Davis*, 533 U.S. 678, 701 (2001).

Section 1231 provides that "when an alien is ordered removed, the Attorney General shall remove the alien from the United States within a period of 90 days (in this section referred to as the 'removal period')." 8 U.S.C. § 1231(a)(1)(A). "During the removal period, the Attorney General shall detain the alien." *Id.* § 1231(a)(2)(A). 8 U.S.C. § 1231(a)(6) further provides:

> An alien ordered removed who is inadmissible under section 1182 of this title, removable under section 1227(a)(1)(C), 1227(a)(2), or 1227(a)(4) of this title or who has been determined by the Attorney General to be a risk to the community or unlikely to comply with the order of removal, may be detained beyond the removal period and, if released, shall be subject to the terms of supervision in paragraph (3).

8 U.S.C. § 1231(a)(6).

In *Zadvydas*, the Supreme Court considered whether 8 U.S.C. § 1231(a)(6) authorizes indefinite detention when no other country is willing to take a person who has been ordered removed.  533 U.S. at 682.  In answering that question, the Court noted that the purpose of the statute was to assure the "alien's presence at the moment of removal." *Id.* at 699.  Therefore, the Court concluded that the removal itself must be reasonably foreseeable to fall within post-removal-order detention authorized by the statute. *Id.*  The Court indicated that there was no specific point in time at which the detention became constitutionally impermissible, and that the allowable period would vary from case to case. *Id.*  Still, to assist the lower courts in making the difficult judgment calls about the lawfulness of detention, the Court designated six months as a "presumptively reasonable period of detention." *Id.* at 701.  Even after six months, though, the Court made clear that the detention may continue unless the alien "provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." *Id.*

Under this framework, it is the petitioner's burden to come forward with evidence showing that removal is not significantly likely to occur sometime soon. *Id.*  Only after the petitioner has come forward with such evidence does the burden flip to the respondents, who must then show evidence that the removal is, in fact, reasonably foreseeable. *See Abdalla v. Johnson*, No. 16-14422, 2017 WL 345731, at *4 (E.D. Mich. Jan. 24, 2017) (rejecting Petitioner's claim that detention of more than a year violated *Zadvydas* when the petitioner "provide[d] no evidence" that removal was unlikely to occur in the near future).

Here, Petitioner contends that his removal is not significantly likely because he has had a final order of removal since 2008, and Respondents have not been successful in removing Petitioner to Cuba in the intervening years. (ECF No. 1, PageID.6.) However, Respondents *tried* to effectuate his removal. The only reason they failed to do so was because Petitioner "refused to

exit his pod."[2] (ECF No. 5-1, PageID.37). Undeterred by Petitioner's behavior, Respondents are still actively seeking his removal. They submit evidence showing that ICE again "served [Petitioner] a notification of third country removal to Mexico" and ICE is planning to attempt to remove Petitioner to Mexico during the week of July 20, 2026. (Stoops Decl. ¶¶ 34, 44, ECF No. 5-1, PageID.36, 37.) Respondents also state that travel documents are not required to remove Petitioner to Mexico, and that ICE "is not aware of any barriers to removal." (*Id*. ¶ 44, PageID.37.). Thus, at this point in time, Petitioner is not in the state of "indefinite, perhaps permanent, detention" that the Court in *Zadvydas* said would violate the constitution. *Zadvydas*, 533 U.S. at 699; *see also Martinez v. Larose*, 968 F.3d 555, 565 (6th Cir. 2020) (holding that a detention of over two years was constitutionally permissible because the removal was likely to occur once Petitioner's appeals were concluded). To the contrary, he will likely be deported any day now.

The Court recognizes that continued detention may, over time, come to resemble the kind of indefinite confinement that *Zadvydas* may not permit. "[A]s the period of prior postremoval confinement grows, what counts as the 'reasonably foreseeable future' conversely [has] to shrink." *Zadvydas*, 533 U.S. at 701. Courts applying this principle recognize that even where the Government continues to pursue removal in good faith, the passage of time can eventually erode

---

[2] Petitioner's failed removal attempt, and other background information, reinforce the Court's decision to deny relief. The reasonableness of an alien's detention often depends on whether the reason for the delay in removal "is due to actions taken by the petitioner or the government." *German Santos v. Warden Pike Cnty. Corr. Facility*, 965 F.3d 203, 211 (3d Cir. 2020). Here, Petitioner is responsible for any delays in his removal process about which he now complains. The government tried to remove him, but he resisted that attempt. *Cf. Alvarez-Jaime v. Raycraft*, No. 1:26-cv-862, ECF No. 13, PageID.142 (W.D. Mich. April 23, 2026) (emphasizing that petitioner was responsible for any delays in the removal process because when the government previously tried to remove him, he "refused to exit the vehicle that transported him to the southern border"). The government therefore already did its part. Petitioner didn't. Moreover, Petitioner has an extensive criminal history. A third-party country might understandably be more cautious accept Petitioner, which, in turn, would result in processing delays. *See Tien v. Raycraft*, No. 1:26-cv-874, ECF No. 8, PageID.92 (W.D. Mich. April 24, 2026) (emphasizing that Petitioner's felony conviction could cause delays in the removal process). Thus, given that Petitioner's own actions have caused his removal proceedings to continue, "Respondents deserve additional grace for any removal delays." *Id.*

the reasonableness of continued detention.  *See Martinez*, 968 F.3d at 565 (explaining that prolonged detention may become unreasonable if the petitioner later demonstrates that removal is no longer likely).

Here, however, the Court is not yet faced with that situation.  An immigration official has testified that the government remains in active discussions with Mexico to coordinate Petitioner's removal. DHS expects that Defendant will be removed to Mexico imminently within the coming days. (*See* ECF No. 5-1, PageID.37.) At this point, then, it seems to the Court that Petitioner's removal remains significantly likely in the reasonably foreseeable future.  Accordingly, the petition will be denied without prejudice. Should the Government's efforts to secure removal ultimately stall or fail to bear fruit, Petitioner remains free to file a new petition asserting that continued detention is no longer reasonable.

## CONCLUSION

For the reasons discussed above, the Court will enter a judgment dismissing Petitioner's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241 without prejudice.

Dated:   August 3, 2026                                    /s/ Robert J. Jonker
                                                         Robert J. Jonker
                                                         United States District Judge